UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| JAHAZIEL ARCE PADILLA,<br><br>                          Petitioner,<br><br>    v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>                          Respondents. | Case No. 3:26-cv-270-ART-CSD<br><br>ORDER GRANTING HABEAS<br>          PETITION<br>        (ECF No. 1) |

Petitioner Jahaziel Arce Padilla brings this action against Respondents in habeas, seeking release or a hearing on the basis that his summary re-detention after release on parole violates due process. Mr. Arce Padilla's habeas petition and his motion for a Temporary Restraining Order are both pending before the Court. (ECF Nos. 1; 2.) The Court now grants the Petition.

## I.      Factual Background

Traveling with his family, Mr. Arce Padilla allegedly presented himself at a port of entry near San Luis, Arizona on or about March 3, 2024 without the documents required to legally enter the United States. (ECF No. 1-3.) On March 4, 2024, while detained at the border, Mr. Arce Padilla was issued a Notice to Appear ("NTA") and placed in removal proceedings, and then subsequently paroled into the United States pending a hearing in removal proceedings. (ECF No. 1-4 at 5; 1-5.) Mr. Arce Padilla's initial grant of parole expired on March 3, 2025. (ECF No. 1-5.)

Mr. Arce Padilla obtained a work permit. (ECF No. 1-6.) He represents that he is a derivative applicant for asylum who was kidnapped by a cartel in Mexico; is applying for Special Immigrant Juvenile Status ("SIJS") on the basis of parental abuse, neglect, abandonment, or a similar basis under state law; and is prima

1

facie eligible for U Nonimmigrant Status because as a minor, he was a victim of a sexually motivated crime which resulted in his hospitalization. (ECF No. 1 at 9-10.)

On August 18, 2025, Mr. Arce Padilla pleaded guilty to use or possession of drug paraphernalia in violation of NRS 453.566, a misdemeanor. (ECF No. 11-3.) On February 17, 2026, Mr. Arce Padilla pleaded guilty to resisting a public officer in violation of NRS 199.280(3). (ECF No. 11-4.) On February 17 or 18, 2026, Mr. Arce Padilla was re-detained by ICE and he has remained in detention since. (ECF No. 1 at 9; 11.)

## II.        Jurisdiction

The Court has jurisdiction over Mr. Arce Padilla's case under 28 U.S.C. § 2441. Respondents argue that the Court lacks jurisdiction over Mr. Arce Padilla's habeas claims because of 8 U.S.C. §§ 1252(g) and 1252(b)(9). But neither of those rules deprive district courts of jurisdiction to hear challenges to confinement, as distinct from challenges to removal and actions taken in furtherance of a removal proceeding.

First, the Supreme Court has limited the reach of § 1252(g). That section deprives courts of jurisdiction to review "any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." The Supreme Court has named these factors the "three discrete events along the road to deportation." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Mr. Arce Padilla challenges the lawfulness of his detention only, and detention is not one of the three events. A request for a bond hearing is "independent of, and collateral to, the removal process." *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025).

Second, the Supreme Court has rejected Respondents' argument that Section 1252(b)(9) is a jurisdictional bar to district court review of immigration detention. That section provides that "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove an alien from the United States" is only proper before the appropriate federal court of appeals in the form of a petition for review of a final removal order. *Id.* The Supreme Court has squarely held that Section 1252(b)(9) does not deprive federal courts of jurisdiction to decide whether certain statutory provisions require detention without a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 292 (2018). Once again, "claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process." *Gonzalez v. U.S. Immig. and Cust. Enf't*, 975 F.3d 788, 810 (9th Cir. 2020); *see Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

**III.     Legal Standard**

**A. Habeas Corpus Under 28 U.S.C. § 2441**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v.*

*Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### B. Due Process

Noncitizens present in the United States are entitled to due process protections. *See, e.g., Trump v. J.G.G.*, 604 U.S. 670 (internal citations and quotations omitted) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."); *Zadvydas*, 533 U.S. at 693 (applying due process in the context of detention). The rights of noncitizens include rights to "notice and opportunity to be heard 'appropriate to the nature of the case.'" *J.G.G.,* 604 U.S. at 673 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)); *see also Mathews v. Eldrige*, 424 U.S. 319, 332 (1976).

To determine whether detention violates procedural due process, courts in the Ninth Circuit typically apply the *Mathews* test. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (observing that the Ninth Circuit and other circuits continue to apply the *Mathews* test notwithstanding the Government's heightened interest in detaining immigrants.) Under that three-part test, the court weighs (1) the private interest at stake, (2) the risk of an erroneous deprivation of that private interest and the value of additional safeguards, and (3) the Government's countervailing interests.  *Id.*

### IV.     Discussion

### A. Exhaustion

As a preliminary matter, Respondents assert that Mr. Arce Padilla must exhaust his administrative remedies by requesting the same relief from the IJ and the BIA before this petition can be heard. In the context of habeas corpus claims, exhaustion of administrative remedies is a prudential requirement rather than a jurisdictional one, as it is not explicitly required by statute. *Hernandez v.*

*Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may require prudential exhaustion if: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). Courts may however waive prudential exhaustion if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing*, 370 F.3d at 1000. Mr. Arce Padilla bears the burden of demonstrating at least one of the *Laing* factors applies. *See Ortega-Rangel v. Sessions*, 313 F.Supp.3d 993, 1003 (N.D. Cal. 2018).

Mr. Arce Padilla's challenge falls squarely into the futility exception to prudential exhaustion. First, Mr. Arce Padilla's claim is that he was entitled to process *before* DHS could detain him, and that the Government's failure to provide him with pre-deprivation process makes his detention unconstitutional. He was not provided with notice of re-detention until he was actually re-detained, making it impossible for him to bring any pre-detention challenge to the loss of his liberty. No post-detention custodial hearing could fully address Mr. Arce Padilla's complaint or award him sufficient relief. *See* Section IV.C, *infra*. Second, in the approximately two and a half months that Mr. Arce Padilla has been detained, the Government has not produced a notice of re-detention, given him the basis for re-detention or afforded him an opportunity to respond. Without an official determination relating to re-detention, it is unclear what there is for Mr. Arce Padilla to challenge before the agency. And since the Government has not given him the opportunity to participate in a re-detention determination, it is

unclear what process Mr. Arce Padilla could have used to bring his claims before the agency.

### B. Due Process

The Court concludes that Respondents violated Mr. Arce Padilla's procedural due process rights. As a person who had been previously released from detention on parole, Mr. Arce Padilla was owed prior notice, individualized assessment, and an opportunity to be heard before re-detention. To reach this conclusion, it is not necessary to decide whether Mr. Arce Padilla was subject to mandatory detention. The subject of this analysis not Respondents' authority to detain, but the adequacy of the process by which they detained Mr. Arce Padilla. *See Caisa Telenchana v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806, at *10; *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1178 (D. Nev. 2025).

### 1. The Private Interest

Having earlier been granted parole, Mr. Arce Padilla has a liberty interest in his release. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Hamdi*, 542 U.S. at 529; *see also Zadvydas*, 533 U.S. at 696. Even when an individual is subject to conditions of parole or release, they have "relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," and their liberty interest "is valuable and must be seen as within the protection of the [Due Process clause]" such that termination of parole "calls for some orderly process." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). District courts in this circuit have applied this principle to parole from immigration detention. *See, e.g., Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 800 F.Supp.3d 1130 (W.D. Wash. Sept. 12, 2025) (collecting cases).

6

Following his initial release from detention, Mr. Arce Padilla acquired a significant liberty interest entitled to the protection of the Due Process Clause. In reasonable reliance on this liberty interest, Mr. Arce Padilla obtained a work permit. He further states, and Respondents do not dispute, that he applied for relief outside of removal proceedings in reliance on his continued liberty, such as derivative asylum and SIJS. *Telenchana*, 2026 WL 696806, at *11; *Musaev v. Hermosillo*, No. 2:26-CV-00522-RAJ, 2026 WL 925611, at *5 (W.D. Wash. Apr. 6, 2026). Accordingly, the first *Mathews* factor weighs heavily in his favor.

### 2. Risk of Erroneous Deprivation

Since Respondents failed to comply with the regulatory requirements for revoking humanitarian parole, the risk of the erroneous deprivation of Mr. Arce Padilla's liberty is high. *Flores Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *7 (W.D. Wash. Jan. 20, 2026).

Humanitarian parole may be terminated in two ways. First, parole terminates automatically and without notice if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). Second, if parole is not terminated automatically, either "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled[.]"). Except in cases of automatic termination, the noncitizen must be provided written notice. 8 C.F.R. § 212.5(e)(2)(i).

Whether automatic or with notice, once a noncitizen's parole has been terminated, implementing regulations require that "any order of exclusion,

deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added); *see also* 8 C.F.R. § 212.5(e)(1). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added).

In sum, under the regulations DHS has three options upon revoking parole. First, DHS may detain the previously-paroled person and then remove them promptly. *Id.* Second, DHS may detain them and then issue an individualized determination that the public interest requires that they remain in custody. *Id.* Third, DHS may re-parole the person.

Here, DHS's failure to detain Mr. Arce Padilla upon the expiration of his parole effectively continued Mr. Arce Padilla's parole status. Although Mr. Arce Padilla's parole automatically terminated upon expiration on March 3, 2025, he was not returned to custody either for the timely execution of a removal order or with an individualized decision regarding his custody by an authorized DHS official. Instead, he was not detained again until almost a full year after his official term of parole expired. (ECF No. 1-5.) For that year, with the implied consent of DHS, Mr. Arce Padilla was living at liberty in the United States, which is the essential effect of a grant of parole under. 8 U.S.C. § 1182(d)(5). DHS having failed to pursue its options to finally terminate Mr. Arce Padilla's parole, it made its only remaining choice under 8 C.F.R. § 212.5(e): it re-paroled him. *See, e.g., Musaev*, 2026 WL 925611, at *6; *Dieng v. Hermosillo*, No. 2:26-CV-00190-LK, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026); *Telenchana*, 2026 WL 696806, at *7.

Since Mr. Arce Padilla was effectively re-paroled without an expiration date, he became entitled to the protections of 8 C.F.R. § 212.5(e)(2)(i). Mr. Arce Padilla's extended parole could only be terminated on notice and an opportunity to be

heard. *See, e.g., Musaev*, 2026 WL 925611, at *6; *Dieng*, 2026 WL 411857, at *6; *Telenchana*, 2026 WL 696806, at *7.

Respondents argue that if Mr. Arce Padilla was on parole in February 2026, when he was re-detained by immigration authorities, that parole was terminated through a proper process. They claim that he received a lawful notice of termination in the form of a new NTA, and that DHS made the required factual findings to re-detain him. Respondents submit no evidence in support of these factual allegations. While Respondents point the allegation in Mr. Arce Padilla's Form I-213 that he was "previously issued a Notice to Appear," the Form I-213 appears to refer to the NTA of March 4, 2024, which was issued before the grant of parole and thus could not have terminated it. (ECF No. 1-4 at 5) ("ARCE was issued a Notice to Appear and processed for 240 removal proceedings... ARCE and his family were paroled into the United States pending an immigration hearing...")

Altogether, there is nothing to show that Mr. Arce Padilla was provided with any process prior to re-detention. The lack of any procedural safeguards whatsoever creates a risk of factual and legal mistakes. *Rodriguez Cabrera*, 808 F. Supp. 3d at 1181; *Gaitan Coreas*, 2026 WL 1121974, at *7. DHS initially found upon granting parole that Mr. Arce Padilla was not a danger or a flight risk, and no evidence has been submitted to show that DHS decided that circumstances changed. Respondents' failure to follow their own regulations created an undue risk of erroneous deprivation. Due process requires, at minimum, that the government justify the basis for re-detention, and that the noncitizen be given the opportunity to be heard with respect to re-detention at a meaningful time and in a meaningful manner. *Telenchana* at *12, *Dieng*, 2026 WL 411857, at *8; *see also Gaitan Coreas*, 2026 WL 1121974, at *7; *O.F.B. v. Maldonado*, No. 25-CV-

9

6336 (HG), 2025 WL 3277677, at *6 (E.D.N.Y. Nov. 25, 2025). Accordingly, the second *Mathews* factor favors Mr. Arce Padilla.

### 3. The Government's Interest

The Government has a strong interest in the efficient administration of immigration laws, including those regarding detention of noncitizens. *Rodriguez Diaz*, 53 F.4th at 1208. However, the Government's interests will still be adequately protected if immigrants are afforded some minimal procedural guarantees. *Rodriguez Cabrera*, 808 F. Supp. 3d at 1182; *see Gaitan Coreas*, 2026 WL 1121974, at *7 ("[T]he government's interest in detaining Petitioner without a hearing is low"). Respondents have not argued that it is costly for them to provide notice of re-detention and an opportunity to be heard. *See Gaitan Coreas*, 2026 WL 1121974, at *7 ("[C]ustody hearings are routine and impose a 'minimal' cost.") Finally, the Government does not have an interest in pursuing the detention of noncitizens in a manner that violates its own regulations. *O.F.B.*, 2025 WL 3277677, at *7. Accordingly, the third *Mathews* factor also favors Mr. Arce Padilla.

### C. Remedy

In like cases, district courts in the Ninth Circuit have generally granted release on the conditions of the petitioner's most recent parole. *See, e.g. Arias v. Larose*, No. 3:25-CV-02595-BTM-MMP, 2025 WL 3295385, at *5 (S.D. Cal. Nov. 25, 2025); *Gaitan Coreas*, 2026 WL 1121974, at *8. In the ordinary case, "the Constitution requires some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Thus, "because the constitutional violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante—that is, to return [Petitioner] to the conditions that existed before his unlawful detention."

10

*Kirykovich v. Hernandez*, No. 2:26-cv-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) (emphasis in original).

### D. Fees

Mr. Arce Padilla requests attorney's fees and costs, albeit without argument or citation to authorities. Neither has the Government commented on this request. Since the issue of attorney's fees and costs and the Court's authority to award them has not been briefed by the parties, the Court denies Mr. Arce Padilla's request for attorney's fees and costs without prejudice and with leave to file a separate motion for fees.

### V.      Conclusion

It is hereby ordered that Petitioner's Petition for Writ of Habeas Corpus, (ECF No. 1), is GRANTED.

It is further ordered that Petitioner must be RELEASED from detention by 3:00pm on May 8, 2026, subject to the conditions of his prior parole.

It is further ordered that, prior to any re-detention, Petitioner is entitled to (1) notice of the reasons for revocation of his parole and (2) an opportunity to rebut those reasons in a hearing before an impartial adjudicator.

It is further ordered that the parties must file a Joint Status Report no later than May 14, 2026, to certify compliance with the Court's order.

It is further ordered that Petitioner's prayer for attorney's fees and costs (ECF No. 1) is DENIED without prejudice and with leave to file a separate motion justifying that relief.

DATED: May 6, 2026

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE

11